# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| THOMAS E. SMITH, | No. C 12-03533 LB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| v. | |
| STEVEN HARRINGTON, PhD, et al., | |
| Defendants. | [Re: ECF No. 22] |

## INTRODUCTION

Plaintiff Thomas Smith filed a Second Amended Complaint against the Santa Rosa City School District (the "District") and six individuals related to it in some way (the "Individual Defendants") (collectively, "Defendants"). Essentially, Mr. Smith alleges that Defendants violated both his and his minor daughter's civil rights and discriminated against his daughter because of her disability. Defendants move to dismiss Mr. Smith's Second Amended Complaint. MTD SAC, ECF No. 22 at 1-2.[1] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the January 17, 2013 hearing. Upon consideration of the papers submitted and the applicable law, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

C 12-03533 LB
ORDER

**STATEMENT**

**I. MR. SMITH'S ALLEGATIONS**

Mr. Smith's minor daughter, A.S., attended Proctor Terrace Elementary School ("Proctor Terrace"), a school within the Santa Rosa City School District. SAC, ECF No. 21, ¶ 1. The city of Santa Rosa is within Sonoma County, California. Mr. Smith has sued the District and six Individual Defendants. *Id*., ¶¶ 2-8. The Individual Defendants are: Steven Harrington, Superintendent of Schools for the Sonoma County Office of Education; Sharon Liddell, the District's Superintendent; George Valenzuela, the District's Compliance Officer; Stephen Mayer, Principal of Proctor Terrace; Debra Sanders, the District's Director of Special Services; and Kim Craven, the District's school psychologist. *Id*.

Mr. Smith alleges that A.S. "suffers from a KNOWN diagnosis of a medical disability commonly referred to as Tourette's Syndrome[,] which is primarily characterized by uncontrollable physical movements commonly referred to as 'TICS.'" *Id*., ¶ 17. In or about February 2012, A.S. was seen by a pediatrics specialist who expressed concern about A.S.'s education development. *Id*., ¶ 20. The specialist recommended to Mr. Smith that A.S. be evaluated for an Individual Education Plan ("IEP"). *Id*.[2] On February 10, 2012, Mr. Smith made his first formal request that A.S. receive an IEP. *Id*., ¶ 21. Ms. Smith does not allege to whom he made this request, but presumably it was made to one or more of Defendants. *See id*., ¶ 18. "Despite their obligation to take action within 30 days of said request," Mr. Smith alleges that "an IEP was not agreed to for A.S. until May 25, 2012, some four months after the recommendation of A.S.'s doctor." *Id*., ¶ 22.

Ms. Smith alleges that the IEP that ultimately was instituted failed to meet A.R.'s educational needs. *Id*., ¶ 23. This, he alleges, was "a direct result of a conflict of interest caused by" Mr. Valenzuela's "dual role" as the District's compliance officer and legal counsel. *Id*. Mr. Smith nevertheless signed the IEP when it was presented to him on May 25, 2012. *Id*., ¶ 24. At that time,

---

[2] Mr. Smith also alleges that, "[b]y letter dated [February 9, 2012], Doctor Hamman of Kaiser Permanente Pediatrics indicated that he felt it was a matter of urgency that A.S. receive a full evaluation addressing A.S. learning concerns." SAC, ECF No. 21, ¶ 20. It is unclear whether Dr. Hamman is the "pediatrics specialist" mentioned by Mr. Smith. *See id*. Regardless, the point is clear: a doctor recommended that A.S. be evaluated for an IEP.

UNITED STATES DISTRICT COURT
For the Northern District of California

A.S. was "in a locked facility," and Mr. Smith felt that it was in his A.S.'s best interests that he sign it. *Id.*

Mr. Smith also alleges that during this period of time (*i.e.*, February 2012 through May 2012), "A.S. was the victim of bullying at the hands of her classmates based upon her disability." *Id.*, ¶ 26. Despite Mr. Smith's efforts to protect A.S. by reporting the bullying to Defendants—he apprised the Individual Defendants of the bullying in writing "numerous times"—Defendants never took "appropriate steps" to protect her. *Id.*, ¶¶ 26-27. Mr. Smith thus became increasingly concerned and upset. *Id.*, ¶ 28.

On or about April 17, 2012, Mr. Smith was present at the Proctor Terrace and spoke with Defendants about the ongoing bullying of A.S. *Id.*, ¶ 29. At no time did Mr. Smith mention, in any way, A.S.'s IEP or her special educational needs. *Id.* Rather, he was there "to discuss one thing and one thing only": "what the school intended to do about the ongoing bullying and harassment due to A.S.'s disability." *Id.* During the meeting, "in a loud voice" ("[a]s would be expected of a frustrated father standing up for his disabled daughter's rights"), Mr. Smith demanded that the school do something about the bullying of A.S. *Id.* At no time, however, did Mr. Smith threaten or attempt to threaten any Defendants with imminent harm. *Id.*, ¶ 30.

Mr. Smith alleges that, on April 19, 2012, in direct retaliation "for his speaking up about his daughter's civil rights," Mr. Meyer, Proctor Terrace's principal, "us[ed] his apparent authority as a 'mandated reporter' to falsely allege that A.S. was being subjected to emotional abuse." *Id.*, ¶ 31. The next day, also in direct retaliation "for [Mr. Smith's] speaking up about his daughter's civil rights," Ms. Craven, the District's psychologist, did the same thing. *Id.*, ¶ 32.

On April 21, 2012—two days after Mr. Meyer's report and one day after Ms. Craven's—Child Protective Services ("CPS") removed A.S. from Mr. Smith's home based upon these allegedly false reports. *Id.*, ¶ 33.

Then, Ms. Smith alleges, on April 23, 2012, "[i]n a further effort to bolster the legitimacy of their false allegations to CPS," Mr. Meyer filed an application for a temporary restraining order against Mr. Smith. *Id.*, ¶ 35. This application was based upon the same allegations that Mr. Meyer used in his child abuse report. *Id.* The Sonoma Superior Court denied Mr. Meyer's application. *Id.*

The next day, both Ms. Craven and the District also filed applications for temporary restraining orders against Mr. Smith. *Id.*, ¶¶ 35-36. Ms. Craven's application was based upon the same allegations that she used in her child abuse report. *Id.*, ¶ 35. The Sonoma Superior Court denied both Ms. Craven's and the District's applications. *Id.*, ¶¶ 35-37.

These child abuse reports and applications for temporary restraining orders, Mr. Smith alleges, stand in contrast to prior statements made by other District employees and medical evaluators. *Id.*, ¶ 38. According to Mr. Smith, "[D]efendants themselves" issued reports and statements prior to the April 17, 2012 meeting which state that A.S. has a good support system at home. *Id.*, ¶ 39. (At that time and for several previous years A.S. was in the sole custody of Mr. Smith. *Id.*) Mr. Smith alleges that one of these reports even described Mr. Smith as a source of support and strength in A.S.'s life. *Id.* In addition, Connie Freeman, who is a licensed educational psychologist, issued a Confidential Psychological Report on April 25, 2012 that asserts that neither Mr. Smith nor his home poses any risk to A.S. *Id.*, ¶ 38. Ms. Freeman's report also specifically stated that A.S. was in no emotional danger and was not suffering any severe anxiety, depression, or withdrawal. *Id.*

As of the date of the Second Amended Complaint (October 30, 2012), A.S. remains in the custody of CPS, roughly six months after she was removed from Mr. Smith's custody. *Id.*, ¶ 43. As a result, A.S. is now exhibiting disturbing behavioral signs. *Id.*, ¶ 44.

## II. PROCEDURAL HISTORY

Mr. Smith filed his original complaint on July 6, 2012. Complaint, ECF No. 1. Four days later, on July 10, 2012, he filed a First Amended Complaint containing nine claims. *See* FAC, ECF No. 5. At this time, Mr. Smith was proceeding *pro se*. On July 30, 2012, Defendants filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Mr. Smith's First Amended Complaint for failure to state a claim for relief. MTD FAC, ECF No. 6. After that, Mr. Smith hired an attorney and opposed the motion to dismiss. Substitution of Counsel, ECF No. 13; Opposition to MTD FAC, ECF No. 12. On October 10, 2012, the court granted Defendants' motion and gave Mr. Smith leave to file a Second Amended Complaint. 10/10/2012 Order, ECF No. 20.

He did so on October 30, 2012. SAC, ECF No. 21. In this complaint, Mr. Smith brings the following eight claims: (1) "disability harassment" in violation of subsections 2(B)(2)-(5) of the

Americans with Disabilities Act of 2008 ("ADA"), 42 U.S.C. §12131 et seq.; (2) retaliation in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 156; (3) violation of the Due Process Clauses of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution; (4) violation of 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 463 U.S. 658 (1978), for failing to train or supervise; (5) supervisory liability under 42 U.S.C. § 1983 and *Monell*; (6) conspiracy in violation of 42 U.S.C. § 1985(c); (7) intentional infliction of emotional distress; and (8) negligent infliction of emotional distress. *See id*.[3]

Defendants have moved to dismiss the Second Amended Complaint. MTD SAC, ECF No. 22. Mr. Smith opposes the motion. Opposition to MTD SAC, ECF No. 23.

## ANALYSIS

**I. LEGAL STANDARD**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

---

[3] Mr. Smith's sixth claim ostensibly is for violation of § 1985(b), but that subsection of § 1985 prohibits conspiracies to obstruct justice. Subsection (c), however, prohibits conspiracies to violate civil rights. *See* 42 U.S.C. § 1985(c). Given the allegations in this case, the court assumes that Mr. Smith made a typographical error and means to bring a claim under § 1985(c).

1  formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be
2  enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal
3  citations and parentheticals omitted).

4  In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true
5  and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *Erickson v. Pardus*, 551
6  U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

7  If the court dismisses the complaint, it should grant leave to amend even if no request to amend
8  is made "unless it determines that the pleading could not possibly be cured by the allegation of other
9  facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*
10 *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party
11 repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See*
12 *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where
13 district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim
14 with leave to amend).

15 **II. DISCUSSION**

16 In their motion, Defendants attack the sufficiency of each of Mr. Smith's claims.  *See generally*
17 MTD SAC, ECF No. 22.  Each of them are addressed in turn below.

18 **A. Mr. Smith's First and Second Claims for Disability Harassment and Retaliation**

19 Mr. Smith brings claims against Defendants under both the ADA (first claim) and the
20 Rehabilitation Act (second claim).  SAC, ECF No. 21, ¶¶ 45-66.

21 With respect to Mr. Smith's ADA claim, the court first makes clear that it fails to the extent it is
22 brought against the Individual Defendants.  Defendants point out in their motion that only "public
23 entities" may be sued for violation of the ADA.  MTD SAC, ECF No. 22 at 11 (citing 42 U.S.C. §
24 12132).  Mr. Smith concedes this point in his opposition and agrees with Defendants that the
25 Individual Defendants are not liable under the ADA.  Opposition to MTD SAC, ECF No. 23 at 18
26 n.13.  Thus, court **DISMISSES WITH PREJUDICE** Mr. Smith's first claim insofar as it is brought
27 against the Individual Defendants.

28 The court next notes, with respect to Mr. Smith's remaining ADA claim against the District, it is

unclear what violation Mr. Smith is alleging. His first claim's title suggests that it is for "disability harassment," and some of the allegations in his claim support this interpretation. *See*, *e.g.*, SAC, ECF No. 21, ¶¶ 47 ("When the institution learns that disability harassment may have occurred, the institution must investigate the incident(s) promptly and respond appropriately. Disability harassment is preventable and cannot be tolerated."), 50 ("Defendants willfully failed [in] their duty to implement protections against disability harassment, [and] . . . never inform[ed] [Mr. Smith] about his due process rights under Title II. When harassment is based on . . . disability, it violates the civil rights laws . . . .").[4] But other allegations in his claim suggest that his claim is for retaliation. *See*, *e.g.*, ¶¶ 55 ("[D]efendants not only failed to take steps to stop the harassment of A.S. [that was] complained of by her father, they actually retaliated against him personally and [against] A.S. indirectly by their false allegations of child abuse . . . ."), 56 ("In doing so, Defendants have violated the law and retaliated against [Mr. Smith] for the act of reporting the harassment A.S. suffered . . . ."), 58 ("As a direct and proximate result of Defendants['] retaliatory acts described above[,] [Mr.

---

[4] Although the Ninth Circuit has not determined whether a plaintiff may bring a "disability harassment" or hostile work environment claim under the ADA, *see Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003) (declining to decide the issue), other circuits have held that a plaintiff may bring one, *see Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1155 (10th Cir. 2004); *Shaver v. Independent Stave Co.*, 350 F.3d 716, 720-22 (8th Cir. 2003); *Fox v. General Motors Corp.*, 247 F.3d 169, 175-76 (4th Cir. 2001); *Flowers v. Southern Regional Physician Services, Inc.*, 247 F.3d 229, 233-35 (5th Cir. 2001). One of those decisions states that "[t]o succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Flowers*, 247 F.3d at 235-36 (citation omitted). In the absence of a Ninth Circuit decision on the issue, the court will follow the Circuits that have decided the issue in the affirmative, and thus concludes that Mr. Smith may bring such a claim (if in fact that is what he attempts to allege). *See Rodriguez v. John Muir Medical Center*, No. 09–00731 CW, 2010 WL 3448567, at *11-12 (N.D. Cal. Aug. 31, 2010); *Guadalupe v. City of Los Angeles*, No. CV 08-2194 AHM JEMX, 2010 WL 140389, at *3 (C.D. Cal. Jan. 11, 2010); *Keller-McIntyre v. San Francisco State University*, No. C-06-3209 MMC, 2007 WL 776126, at *13 (N.D. Cal. Mar. 12, 2007).

Smith] has been damages in a sum according to proof at trial.").[5]  On this basis alone, it is clear that Mr. Smith's first claim fails because it does not provide Defendants with fair notice of the violation underlying the claim that he intends to bring. *See Twombly*, 550 U.S. at 555.  Accordingly, Mr. Smith's first claim for violation of the ADA, insofar as it is brought against the District, is **DISMISSED WITHOUT PREJUDICE**.

His Rehabilitation Act claim clearly is for retaliation, though. *See* SAC, ECF No. 21, ¶¶ 59-66.[6]  But as Defendants point out in their motion (and as Mr. Smith concedes in his opposition), there is no individual liability for violation of the Rehabilitation Act. *See* MTD SAC, ECF No. 22 at 11 (citing 29 U.S.C. § 794(a), *Doe ex rel. Doe v. State of Hawaii Dep't of Education*, 351 F. Supp. 2d 998, 1010-11 (D. Haw. 2004)); Opposition to MTD SAC, ECF No. 23 at 18 n.13.  Thus, the court **DISMISSES WITH PREJUDICE** Mr. Smith's second claim insofar as it is brought against the Individual Defendants.

This leaves only the District.  The anti-retaliation provision of the ADA provides states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).  Section 504(d) of the Rehabilitation Act, in turn, incorporates the ADA's anti-retaliation provision.  29 U.S.C. § 794(d) ("standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under . . . the Americans with Disabilities Act of 1990"); *Hodge v. Oakland*

---

[5] The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  Thus, to state a claim for retaliation, a plaintiff must show that he or she acted to protect his or her rights, that an adverse action thereafter was taken against him or her, and that a causal link exists between the two events. *See Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004) (citing *Brown*, 336 F.3d at 1186-87).

[6] The court notes that a parent has standing to assert a Rehabilitation Act claim that defendants retaliated against the parent for complaints relating to his or her child's education. *See Weber v. Cranston School Committee*, 212 F.3d 41, 48–49 (1st Cir. 2000); *see also Kampmeier v. Nyquist*, 553 F.2d 296, 299 (2d Cir. 1977); *Stassart v. Lakeside Joint School Dist.*, No. C 09–1131 JF (HRL), 2009 WL 3188244, at *10-11 (N.D. Cal. Sep. 29, 2009).

C 12-03533 LB
ORDER

8

*Unified School Dist.*, No. C 09–04719 RS, 2012 WL 1933678, at *8 (N.D. Cal. May 29, 2012). Regulations issued pursuant to Section 504 further provide that the failure to "meet individual educational needs of handicapped persons" is a violation of the Rehabilitation Act. 34 C.F.R. § 104.33(b)(1); *see also* 34 C.F.R. § 104.33(b)(2) ("[i]mplementation of an Individualized Education Program developed in accordance with the [IDEA Act] is one means of meeting the standard established in paragraph (b)(1)(I) of this section"). Accordingly, retaliation claims brought pursuant to either statute are analyzed under the same standard. *Douglas v. Cal. Dep't of Youth Auth.*, 285 F.3d 1226, 1229 n.3 (9th Cir. 2002) (cases interpreting the two laws are "interchangeable").

Thus, to state a claim for retaliation, a plaintiff must show that he or she acted to protect his or her rights, that an adverse action thereafter was taken against him or her, and that a causal link exists between the two events. *See Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003)).

Defendants argue that Mr. Smith does not allege sufficient facts to show that A.S. has a disability within the meaning of the ADA. Under the ADA, the term "disability" means, with respect to an individual, "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual[7]; (B) a record of such an impairment; or (C) being regarded as having such an impairment" as described in 42 U.S.C. § 12102(3). 42 U.S.C. § 12102(1). In his complaint, although Mr. Smith does not provide many details about the extent of A.S.'s impairment, he does allege that A.S. "suffers from a KNOWN diagnosis of a medical disability commonly referred to as Tourette's Syndrome[,] which is primarily characterized by uncontrollable physical movements commonly referred to as 'TICS.'" SAC, ECF No. 21, ¶ 17. He also alleges that A.S. was seen by a pediatrics specialist who expressed concern about A.S.'s education development recommended to Mr. Smith that A.S. be evaluated for an IEP. *Id*., ¶ 20. The court believes that this is sufficient, at the pleading stage, to allege that A.S. is "disabled" under the ADA

---

[7] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2).

C 12-03533 LB
ORDER

1  (and thus the Rehabilitation Act).       Citing no authority, Defendants also argue that Mr. Smith does

2  not allege a causal link between his complaining about the bullying received by A.S. and the

3  allegedly false reports of abuse because Defendants, as "mandatory reporters" under California's

4  mandatory reporting statutes, were required to make their reports.  At this stage, though, the court

5  looks to the allegations in Mr. Smith's complaint, and those allegations sufficiently allege a causal

6  link.  He alleges that A.S. is disabled, that she was bullied because of her disability, that he

7  complained to Defendants about it, and that Defendants, in retaliation for his complaints, then made

8  false child abuse reports that contradicted prior statements that A.S. was in good hands with her

9  father.  This is sufficient.  Accordingly, the court **DENIES** Defendants' motion to dismiss Mr.

10  Smith's second claim insofar as it alleged against the District.

**B. Mr. Smith's Third Claim for Violation of the Fourth, Eighth, and Fourteenth Amendments**

Mr. Smith also brings a claim against Defendants for violation of the "due process clauses" of the Fourth, Eighth, and Fourteenth Amendments.  SAC, ECF No. 21, ¶¶ 67-73.  First, as Defendants correctly point out, the Fourth and Eighth Amendments do not contain due process clauses.  *See* U.S. Const. amend. IV, VIII.  In addition, nothing in Mr. Smith's allegations suggests a violation of any rights protected by those Amendments.  *See generally* SAC, ECF No. 21.  Thus, to the extent his third claim is based on a violation of violation of them, his claim is **DISMISSED WITH PREJUDICE**.

His claim also fails to the extent that it is based on a violation of the due process clause of the Fourteenth Amendment.  As Judge Illston explained:

> "[T]he Fourteenth Amendment is not self-enforcing.  Rather, § 5 of the Fourteenth Amendment grants Congress the power to enact legislation with the purpose of enforcing the Fourteenth Amendment.  *City of Boerne v. Flores*, 521 U.S. 507, 518–519, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).  In order to bring a claim . . . for violation of the Fourteenth Amendment, plaintiff must bring a claim under 42 U.S.C. § 1983.  Section 1983 allows one to bring suit against a person or entity acting under color of state law for violation of her constitutional rights.  Simply alleging a violation of her Fourteenth Amendment rights is insufficient."

*Johnson v. Sutter Delta Medical Center*, No. C 11–03628 SI, 2011 WL 5444319, at *3 (N.D. Cal.

Nov. 9, 2011). Here, Mr. Smith did not bring his Fourteenth Amendment claim under § 1983.[8] Thus, his third claim, to the extent it is based on the Fourteenth Amendment, is **DISMISSED WITHOUT PREJUDICE**.

The Individual Defendants also argue that, even if Mr. Smith had brought his claim under § 1983, they are protected by qualified immunity because California state law requires them to report suspected child abuse to an appropriate law enforcement agency or county welfare department. *See* MTD SAC, ECF No. 22 at 13 (citing Cal. Penal Code §§ 11165.7(a), 11165.9, 11116).[9] But as Mr. Smith correctly notes, the law of the Ninth Circuit is clear that "[i]mmunity under § 1983 is governed by federal law; state law cannot provide immunity from suit for federal civil rights violations." *Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 2000).[10] In *Wallis*, the Ninth Circuit reversed a district court that had applied state statutory immunities for child abuse investigations to the federal § 1983 constitutional claims. *Id*. (citing *Martinez v. California*, 444 U.S. 277, 284, n.8 (1980) ( "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law."); *Good v. Dauphin County Social Serv.*, 891 F.2d

---

[8] 42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by any person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Section 1983 is not itself a source for substantive rights, but rather a method for vindicating federal rights elsewhere conferred. *See Graham v. Connor*, 490 U.S. 386, 393–394 (1989). To state a claim under § 1983, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[9] California Penal Code § 11165.9 provides in relevant part: "Reports of suspected child abuse or neglect shall be made by mandated reporters, or in the case of reports pursuant to Section 11166.05, may be made, to any police department or sheriff's department, not including a school district police or security department, county probation department, if designated by the county to receive mandated reports, or the county welfare department." A "mandated reporter" includes, among other persons, a "teacher," a "classified employee of a public school," an "administrative officer or supervisor of child welfare and attendance, or a certificated pupil personnel employee of a public or private school," an "employee of a county office of education or the State Department of Education whose duties bring the employee into contact with children on a regular basis," and a "person who is an administrator or presenter of, or a counselor in, a child abuse prevention program in a public or private school." Cal. Penal Code § 1115.7(a)(1), (4), (5), (9), (17).

[10] Defendants did not address Mr. Smith's response to their qualified immunity argument in their reply brief. *See generally* Reply, ECF No. 25.

1087, 1090-91 (3d Cir. 1989) (state laws providing immunity from suit for child abuse investigators have no application to suits under § 1983)). In support of their argument in favor of qualified immunity, Defendants cite only a single district court case, *Watson v. County of Santa Clara*, 468 F. Supp. 2d 1150 (N.D. Cal. 2007). In that case, however, the court dismissed the plaintiff's complaint with leave to amend, finding that immunity under a California mandatory reporting statute was applicable to the state statutory violations but saying nothing about whether it was applicable to the <u>federal</u> civil rights claims that the plaintiff alleged. *Id*. at 1161. *Watson*, then, does not help the Individual Defendants here, and the court declines to apply qualified immunity under the state statutes cited to shield them from liability for Mr. Smith's federal civil rights claims.

**C. Mr. Smith's Fourth and Fifth Claims for Violation of § 1983 and *Monell***

*1. Mr. Smith's Supervisory Liability Claims against the Individual Defendants*

In his fourth and fifth claims, Mr. Smith brings claims for supervisory liability under § 1983 against the Individual Defendants. SAC, ECF No. 21 at 12-14.[11] The Individual Defendants argue that Mr. Smith has failed to sufficiently allege facts to support such claims against them.

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). To adequately plead such a claim, "allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party

---

[11] The court would normally cite to paragraph numbers, but the paragraph numbers within Mr. Smith's fourth claim are out of order. *See* SAC, ECF No. 21 at 12-14. And to be clear, Mr. Smith brings his fourth claim for "failure to train and supervise" against all Defendants and brings his fifth claim for "supervisory liability" against Mr. Harrington, Superintendent of Schools for the Sonoma County Office of Education, and Ms. Liddell, the District's Superintendent, only. *Id*. at 12-13.

C 12-03533 LB
ORDER

to defend itself effectively." *Id*. at 1216.  These factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*.

Here, Mr. Smith's complaint contains few factual allegations showing the Individual Defendants' personal involvement in the constitutional violations or a sufficient causal connection between the their wrongful conduct and the constitutional violation.  In his fourth claim, Mr. Smith repeatedly alleges that (unspecified) "Defendants" failed to address the bullying of his daughter, failed to take appropriate measures to deal with the situation, failed to implement an adequate plan of action, and  displayed a deliberate indifference to their duty to train and supervise employees. SAC, ECF No. 21 at 12.  He also alleges in his fifth claim that Mr. Harrington and Ms. Liddell knew or should have known about the bullying of A.S. because Mr. Smith delivered multiple complaint to the Sonoma County Office of Education and the District.  *Id*. at 13.  And he also argues in his opposition that his allegations describing Mr. Harrington's, Ms. Liddell's, Mr. Valenzuela's, and Ms. Sanders's respective jobs and duties support his claim.  *See* Opposition to MTD SAC, ECF No. 23 at 25 (citing SAC, ECF No. 21, ¶¶ 2-4, 6).

This is not sufficient.  The Ninth Circuit recently suggested that a plaintiff's allegations of a similar level of detail to be insufficient to support a supervisory liability claim under § 1983.  *See Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir. 2012).  As the court explained in relevant part:

> After thoroughly examining the plaintiffs' complaint, we agree that there are few specific allegations against the State defendants.  Most of the allegations in the complaint simply reference "Defendants," without specifying whether the conduct at issue was committed by the named State officials, County officials, or the "John Doe" supervisors or caseworkers.  For many of the detailed factual allegations, such as the failure to respond to a particular report of abuse or authorize a particular medical procedure, it is implausible to suggest that Willden or Comeaux personally committed the alleged violation.
>
> The allegations that do expressly reference the State defendants are too general to state a claim for supervisory liability.  In *Starr v. Baca*, the plaintiff alleged that Sheriff Baca himself had been given clear notice by the Department of Justice of the specific unconstitutional conditions in the jails; that the Sheriff received numerous reports documenting inmate violence caused by the unconstitutional conduct of his deputies; and that the Sheriff ultimately acquiesced in these constitutional violations. *See* 652 F.3d at 1208-10.
>
> In contrast, the allegations here claim that the agencies directed by Willden and Comeaux have oversight responsibility for Clark County's foster care system and are required to ensure that Clark County is complying with state and federal law.  The complaint also alleges that all of the defendants had knowledge of independent

C 12-03533 LB
ORDER
13

> reports documenting the systemic failures of foster care in Nevada. But it does not allege that Willden or Comeaux had any personal knowledge of the specific constitutional violations that led to Plaintiffs' injuries, or that they had any direct responsibility to train or supervise the caseworkers employed by Clark County.

*Id*. While the Ninth Circuit never specifically found that these allegations were insufficient—because it took issue with the district court's decision not to allow the plaintiff leave to amend his complaint to allege more facts and therefore reversed the dismissal of the claim and remanded the action—its language strongly suggests that such high-level allegations are not good enough. *Id*. at 1005.

Here, the court believes that Mr. Smith's allegations are not sufficient. He either refers to "Defendants" generally or relies almost entirely on particular Individual Defendants' standard job responsibilities. But given the discussion in *Willden*, the court also finds that Mr. Smith should have the opportunity to allege additional facts to sufficiently state a supervisory liability claim against some or all of the Individual Defendants. Accordingly, the court **DISMISSES WITHOUT PREJUDICE** Mr. Smith's fourth and fifth claims as alleged against the Individual Defendants.

*2. Mr. Smith's Monell Claim against the District*

In his fourth claim, Mr. Smith also brings a *Monell* claim against the District. *See Monell v. Department of Social Services*, 463 U.S. 658 (1978). It is true that local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *See Monell*, 436 U.S. at 690. A municipality, however, may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. *See Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Liability based on a municipal policy may be satisfied in one of three ways: (1) by alleging and showing that a city or county employee committed the alleged constitutional violation under a

1  formal governmental policy or longstanding practice or custom that is the customary operating
2  procedure of the local government entity; (2) by establishing that the individual who committed the
3  constitutional tort was an official with final policymaking authority, and that the challenged action
4  itself was an act of official governmental policy which was the result of a deliberate choice made
5  from among various alternatives; or (3) by proving that an official with final policymaking authority
6  either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional
7  decision or action and the basis for it. *See Fuller*, 47 F.3d at 1534; *Gillette v. Delmore*, 979 F.2d
8  1342, 1346-47 (9th Cir. 1992).

9  Mr. Smith does not sufficiently allege municipal liability. He alleges that certain Individual
10  Defendants did certain acts, but nowhere in his fourth claim does he allege facts to suggest that the
11  District had a policy that amounted to deliberate indifference to constitutional rights and was the
12  moving force behind the alleged constitutional violation. *See* SAC, ECF No. 21 at 12-13. He makes
13  conclusory statements regarding a policy being in place, but he makes these allegations with respect
14  to his fifth claim, which is alleged against Mr. Harrington and Ms. Liddell only. *See id.*, ¶¶ 78-79.
15  Nor does Mr. Smith address his *Monell* claim in his opposition. *See* Opposition to MTD SAC, ECF
16  No. 23 at 23-26 (discussing only the supervisory liability claims against the Individual Defendants).
17  Accordingly, because it is not clear that Mr. Smith could not allege additional facts, the court
18  **DISMISSES WITHOUT PREJUDICE** Mr. Smith's fourth claim under *Monell* as alleged against
19  the District.

20  **D.  Mr. Smith's Sixth Claim for Conspiracy in Violation of § 1985**

21  Mr. Smith also alleges a claim for conspiracy under 42 U.S.C. § 1985(c). To state a claim under
22  § 1985(c) for a conspiracy to violate civil rights, a plaintiff must plead four elements: "(1) a
23  conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of
24  persons of the equal protection of the laws, or of equal privileges and immunities under the laws;
25  and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person
26  or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska*
27  *Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).
28  Further, "[t]o establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate
the existence of an agreement or meeting of the minds' to violate constitutional rights." *Crowe v.*

C 12-03533 LB
ORDER
15

1  *Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at
2  1301). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial
3  evidence such as the actions of the defendants." *Id.* (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at
4  1301) (quotation marks omitted). "Whether defendants were involved in an unlawful conspiracy is
5  generally a factual issue . . . ." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301–02 (citation omitted).
6  Nevertheless, "the plaintiff must state specific facts to support the existence of the claimed
7  conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dept. of
8  Social and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)); *see also Maceachern v. City of
9  Manhattan Beach*, 623 F. Supp. 2d 1092, 1110 (C.D. Cal. 2009). "To be liable, each participant in
10 the conspiracy need not know the exact details of the plan, but each participant must at least share
11 the common objective of the conspiracy." *Id.* (quoting *United Steelworkers of Am. v. Phelps Dodge
12 Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc)) (quotation marks omitted). In addition, a
13 plaintiff must show that an "actual deprivation of his constitutional rights resulted from the alleged
14 conspiracy." *Hart v. Parks*, 450 F.3d 1059, 1071–72 (9th Cir. 2006) (quoting *Woodrum v.
15 Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989)) (quotation marks omitted).

16     The court believes that Mr. Smith does not sufficiently allege a conspiracy. First, he alleges that
17 his earlier allegations support "by inference" the existence of a "tacit agreement" among
18 "Defendants" to violate A.S.'s rights, but the allegations he refers to describe actions taken by
19 certain Defendants, not an agreement between them. For instance, Mr. Smith alleges that Mr. Meyer
20 filed a false child abuse report and that Ms. Craven did the same thing the next day, but he does not
21 allege facts to support Mr. Meyer and Ms. Craven doing this as part of a conspiracy. Second, Mr.
22 Smith simply alleges that "Defendants" entered into an agreement, but some of the Individual
23 Defendants, such as Ms. Sanders, ever did anything that would suggest that she did so. In sum, the
24 court simply finds Mr. Smith's allegations too conclusory at this time. But because it is not clear
25 that he could not successfully amend his claim, the court **DISMISSES WITHOUT PREJUDICE**
26 Mr. Smith's sixth claim for conspiracy in violation of § 1985.

27     **F. Mr. Smith's Seventh and Eighth Claims for Intentional and Negligent Infliction of
28 Emotional Distress**

    Mr. Smith brings one claim for intentional infliction of emotional distress and one claim for

1  negligent infliction of emotional distress. SAC, ECF No. 21, ¶¶ 93-104. Defendants move to
2  dismiss them because they are immune under California law. MTD SAC, ECF No. 22 at 17-18.
3  Although Mr. Smith addresses nearly all of Defendants' arguments in his opposition, he does not
4  address Defendants' arguments about these two claims. *See generally* Opposition to MTD SAC,
5  ECF No. 23.

6  Mr. Smith's failure to address these claims cannot be understood as a concession on the merits of
7  Defendants' motion to dismiss. *Cf.* N.D. Cal. Civ. L.R. 7–3(b) (a party against whom a motion is
8  directed must file a statement of non-opposition if it does not oppose the motion). And it cannot be
9  intended as a voluntary dismissal of these claims. *Cf.* Fed. R. Civ. P. 41(a)(1) (plaintiff may
10 voluntarily dismiss an action as opposed to only some claims against a defendant); *Ethridge v.*
11 *Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir. 1988) (plaintiff may not use Rule 41(a) as
12 a mechanism for dismissing only certain claims; instead, the proper procedure is to amend the
13 complaint). But the court holds that Mr. Smith's decision not to address these claims in his
14 opposition to Defendants' motion constitutes abandonment of them. *See Jenkins v. County of*
15 *Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned two claims by not raising
16 them in opposition to the County's motion for summary judgment); *Green Desert Oil Group v. BP*
17 *West Coast Prods.*, No. C 11–02087 CRB, 2012 WL 555045, at *2 (N.D. Cal. Feb. 21, 2012)
18 (complaint alleged many breaches of contract; defendant moved to dismiss them all; plaintiffs
19 defended only three of the alleged breaches in their opposition); *Qureshi v. Countrywide Home*
20 *Loans, Inc.*, No. 09–4198, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (deeming
21 plaintiff's failure to address, in opposition brief, claims challenged in a motion to dismiss, an
22 "abandonment of those claims").

23 The question, then, is whether this court should dismiss Mr. Smith's seventh and eighth claims
24 with or without prejudice. In instances where a plaintiff simply fails to address a particular claim in
25 its opposition to a motion to dismiss that claim, courts generally dismiss it with prejudice. *See In re*
26 *Hulu Privacy Litig.*, No. C 11–03764 LB, 2012 WL 2119193, at *3 (N.D. Cal. June 11, 2012)
27 (discussing case law on this issue). As Mr. Smith did not address these claims at all in his
28 opposition, the court sees no reason to depart from this usual outcome. Accordingly, Mr. Smith's
seventh and eighth claims for intentional and negligent infliction of emotional distress, respectively,

C 12-03533 LB
ORDER
17

are **DISMISSED WITH PREJUDICE**.

## V.  CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.  Mr. Smith's second claim **SURVIVES**.  His first (as against the District), second (as against the District), third (to the extent it is based on the Fourteenth Amendment), fourth, fifth, and sixth claims are **DISMISSED WITHOUT PREJUDICE**.  His first (as against the Individual Defendants), second (as against the Individual Defendants), fourth (to the extent it is based on the Fourth and Eighth Amendments), seventh, and eighth claims are **DISMISSED WITH PREJUDICE**.

Mr. Smith may file a Third Amended Complaint within 21 days from the date of this order.

**IT IS SO ORDERED.**

Dated: January 9, 2013

_____
LAUREL BEELER
United States Magistrate Judge