UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| THOMAS E. SMITH, | No. C 12-03533 LB |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT** |
| v. | |
| STEVEN HARRINGTON, PhD, et al., | [Re: ECF No. 28] |
| Defendants. | |

## INTRODUCTION

Plaintiff Thomas Smith filed a Third Amended Complaint against the Santa Rosa City School District (the "District") and six individuals related to it in some way (the "Individual Defendants") (collectively, "Defendants"). Essentially, Mr. Smith alleges that Defendants violated both his and his minor daughter's civil rights and retaliated against him for sticking up for her. Defendants move to dismiss four of Mr. Smith's six causes of action. MTD TAC, ECF No. 28 at 1-2.[1] Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the April 4, 2013 hearing. Upon consideration of the papers submitted and the applicable law, the court **GRANTS** Defendants' motion.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

**STATEMENT**

**I. MR. SMITH'S ALLEGATIONS**

Mr. Smith's minor daughter, A.S., attended Proctor Terrace Elementary School ("Proctor Terrace"), a school within the Santa Rosa City School District. TAC, ECF No. 27, ¶ 1. The city of Santa Rosa is within Sonoma County, California. Mr. Smith has sued the District and six Individual Defendants. *Id.* ¶¶ 2-8. The Individual Defendants are: Steven Harrington, Superintendent of Schools for the Sonoma County Office of Education; Sharon Liddell, the District's Superintendent; George Valenzuela, the District's Compliance Officer; Stephen Mayer, Principal of Proctor Terrace; Debra Sanders, the District's Director of Special Services; and Kim Craven, the District's school psychologist. *Id.*

Mr. Smith alleges that A.S. "suffers from a KNOWN diagnosis of a medical disability commonly referred to as Tourette's Syndrome[,] which is primarily characterized by uncontrollable physical movements commonly referred to as 'TICS.'" *Id.* ¶ 17. In or about February 2012, A.S. was seen by a pediatrics specialist who expressed concern about A.S.'s education development. *Id.* ¶ 20. The specialist recommended to Mr. Smith that A.S. be evaluated for an Individual Education Plan ("IEP") and "indicated that he felt it was a matter of urgency that A.S. receive a full evaluation addressing A.S.['s] learning concerns." *Id.* On February 10, 2012, Mr. Smith made his first formal request that A.S. receive an IEP. *Id.* ¶ 21. He submitted this request to Proctor Terrace, and it was received on February 14, 2012. *Id.* "Despite their obligation to take action within 30 days of said request," Mr. Smith alleges that "an IEP was not held until May 25, 2012, three months after the recommendation of A.S.'s doctor." *Id.*

Mr. Smith alleges that the IEP that ultimately was instituted failed to meet A.R.'s educational needs. *Id.* ¶ 22. This, he alleges, was "a direct result of a conflict of interest caused by" Mr. Valenzuela's "dual role" as the District's compliance officer and legal counsel. *Id.* Mr. Smith nevertheless signed the IEP when it was presented to him on May 25, 2012. *Id.* ¶ 23. At the time, A.S. was "in a locked facility," and Mr. Smith felt that it was in A.S.'s best interests that he sign it. *Id.*

Mr. Smith also alleges that during this period of time (*i.e.*, February 2012 through May 2012),

"A.S. was the victim of bullying at the hands of her classmates based upon her disability." *Id.* ¶ 24. Despite Mr. Smith's efforts to protect A.S. by reporting the bullying to Defendants—he apprised Ms. Liddell, Mr. Mayer, Ms. Craven, and Mr. Valenzuela of the bullying in writing "numerous times"—Defendants never took "appropriate steps" to protect her. *Id.* ¶¶ 24-25. Specifically:

- On February 15, 2012, Mr. Smith sent an email to Mr. Mayer stating that A.S. "is very disturbed" by her classmate P's bullying and describing instances of this bullying. *Id.* ¶ 26. Mr. Smith also "made it clear that absent action resolving this bullying," he "would be left [with] no other option but to file" a complaint based on discrimination and child neglect. *Id.*

- On February 21, 2012, "a hand written complaint, signed by [Mr. Smith] and his daughter A.S., was delivered to [Mr. Mayer]." *Id.* ¶ 27. The complaint alleged that four of A.S.'s classmates had chased A.S. and poked her with a branch, and it also "recounted that Mr. Smith had made numerous complaints about A.S. being bullied and hazed by P." and noted that none of complaints had been resolved. *Id.*

- On February 23, 2012, Mr. Smith contacted by telephone the United States Department of Education Office of Civil Rights ("OCR") to look for "help with the disability bullying he felt [A.S.] was undergoing." *Id.* ¶ 28. Mr. Smith alleges that a Mr. Piper, sent Proctor Terrace "a copy of the October 26, 2010 'Dear Colleague' letter and summary." *Id.*[2] He further alleges that Mr. Valenzuela, at least, received this letter and summary. *Id.*

- On February 23, 2012, Mr. Smith spoke to Mr. Mayer by telephone and informed him that he had spoken to the OCR. *Id.* ¶ 29. Mr. Mayer later acknowledged this telephone call. *Id.* ¶ 30.

- On February 24, 2012, Mr. Mayer wrote a letter to Mr. Smith that stated that an investigation of three separate attacks on A.S. (occurring within a period of seven days) by five of her classmates was needed. *Id.* ¶ 31. Mr. Smith argues that this statement "conflicts with Mr. Mayer's final analysis that '[t]hese appear to be isolated incidents with no malice or ill-will intended by other students.'" *Id.*

- On February 28, 2012, Ms. Craven "wrote to [Mr.] Smith agreeing to an IEP, [despite] already having concluded that[,] after observing A.S. on multiple occasions, there was '[n]o outward sign of anxiety in A.S. were noted.'" *Id.* ¶ 32. Mr. Smith notes that Ms. Craven's conclusion conflicts with the affidavit she signed "53 days later" in which she stated that Mr. Smith may be causing her emotional anxiety. *Id.*

- On March 1, 2012, Ms. Liddell wrote to Mr. Mayer (cc'ing Gail Eagan, Ms. Sanders, and Mr. Valenzuela) stating that Mr. Smith has complained about discrimination toward and harassment of A.S., wants training to occur at Proctor Terrace to avoid these things, and plans to file a complaint. *Id.* ¶ 33.[3] Ms. Liddell allegedly stated that "if the child does have Tourette's and/or a learning disability that is causing poor student response, we need to look very carefully at the situation." *Id.* She then allegedly recounted that on March 1, 2012 Mr. Smith "approached a Proctor Terrace parent who was taking pictures at the school and

---

[2] Mr. Smith never identifies who "Mr. Piper" is, nor does he describe what this "letter and summary" is. *See generally* TAC, ECF No. 27.

[3] Mr. Smith never identifies who "Gail Eagan" is. *See generally* TAC, ECF No. 27.

demanded that the pictures of his daughter be deleted." *Id.* Ms. Liddell then allegedly suggested that a restraining order might be required. *Id.*

- On March 2, 2012, Mr. Mayer responded to Ms. Liddell's March 1, 2012 communication. *Id.* ¶¶ 34-36. Mr. Mayer used "inflammatory language" "to describe anything [Mr.] Smith did and stated that "he had his ESOM checking the internet to see if A.S. is a 'missing child'" because, Mr. Smith alleges, this "was apparently being spread as the rational for why [Mr.] Smith would objected to photographs of his disabled daughter being placed on the internet." *Id.* ¶ 35. Mr. Smith alleges that Mr. Mayer admitted that the photographs taken of A.S. were "candid" and that Mr. Smith had not signed a release that allowed A.S. to be photographed. *Id.* ¶ 36.

- On March 6, 2012, Mr. Smith "wrote a complaint addressed to [Mr. Valenzuela] . . . in which [Mr.] Smith expressed his dissatisfaction with the IEP issues" and "recounted at least 11 incidents of bullying or harassment" that were unresolved. *Id.* ¶ 39.

- On March 15, 2012, in an attempt to "get someone to do something about his daughter A.S.'s disability harassment, or at least try and get [D]efendants to follow the OCR Dear College guidelines issued October 26, 2010," Mr. Smith "once again wrote a complaint addressed to [Mr. Valenzuela] complaining that there have been two additional photographic incidents, apparently sanctioned by Mrs. Koski, and involving the same parent who was advised not to photograph A.S. previously." *Id.* ¶ 40.[4] Mr. Smith "stated that he 'considered [] unauthorized photos of the child to be a form of bullying . . . harassment . . . and intimidation of both child and parent.'" *Id.*

- On March 26, 2012, Mr. Smith "wrote to Mrs. Koski, whom [Mr.] Mayer stated was authorizing the photographs, [stating,] 'In the coming months you will have to answer my questions through the complaint process for the reason why you let the parent continue to photograph A.S.'" *Id.* ¶ 41.[5]

In light of these communications, Mr. Smith thus became increasingly concerned and upset. *Id.* ¶ 43.

On April 17, 2012, Mr. Smith "was present at [Proctor Terrace] and spoke with Defendants" about the ongoing bullying of A.S. *Id.* ¶ 44. At no time did Mr. Smith mention, in any way, A.S.'s IEP or her special educational needs. *Id.* Rather, he was there "to discuss one thing and one thing only": "what the school intended to do about the ongoing bullying and harassment due to A.S.'s

---

[4] Mr. Smith never identifies who "Mrs. Koski" is. *See generally* TAC, ECF No. 27.

[5] Mr. Smith also alleges that on April 10, 2012, "in a handwritten letter, A.S. complained about P.'s bullying her today with 'dirty looks' and chastizing [sic] A.S. for picking up a piece of paper off [of] the floor.'" TAC, ECF No. 27 ¶ 42. Mr. Smith then alleges that "[t]he letter also pointed out that complaints have been made about P.'s bullying A.S. in the past and 'nothing seem (sic) to be done about this classmate[']s bullying toward my child." *Id.* These allegations are confusing because it is unclear whether the "letter" was written by A.S. or by Mr. Smith and because it is unclear to whom the letter was given.

C 12-03533 LB
ORDER
4

1  disability." *Id.* During the meeting, "in a loud voice," Mr. Smith "demanded that the school do
2  something" about the bullying of A.S. *Id.* At no time, however, did Mr. Smith threaten or attempt
3  to threaten any Defendants with imminent harm. *Id.* ¶ 45.

4  Mr. Smith alleges that, on April 19, 2012, "[i]n direct retaliation for [Mr. Smith] speaking up
5  about his daughter's civil rights," Mr. Meyer "us[ed] his apparent authority as a 'mandated reporter'
6  to falsely allege that A.S. was being subjected to emotional abuse." *Id.* ¶ 46. The next day, also in
7  direct retaliation "for [Mr. Smith] speaking up about his daughter's civil rights," Ms. Craven did the
8  same thing. *Id.* ¶ 47.

9  On April 21, 2012—two days after Mr. Meyer's report and one day after Ms. Craven's—Child
10 Protective Services ("CPS") removed A.S. from Mr. Smith's home based upon these allegedly false
11 reports. *Id.* ¶ 48.

12 Then, Mr. Smith alleges, on April 23, 2012, "[i]n a further effort to bolster the legitimacy of their
13 false allegations to CPS," Mr. Meyer filed an application for a temporary restraining order against
14 Mr. Smith. *Id.* ¶ 49. This application was based upon the same allegations that Mr. Meyer used in
15 his child abuse report. *Id.* The Sonoma County Superior Court denied Mr. Meyer's application. *Id.*
16 The next day, Ms. Craven, Ms. Koski, and Virginia Matich also filed applications for temporary
17 restraining orders against Mr. Smith. *Id.* ¶¶ 50-51, 53.[6] Ms. Craven's application was based upon
18 the same allegations that she used in her child abuse report. *Id.* ¶ 50. The Sonoma County Superior
19 Court denied all three applications. *Id.* ¶¶ 50, 52, 54.

20 These child abuse reports and applications for temporary restraining orders, Mr. Smith alleges,
21 stand in contrast to prior statements made by other District employees and medical evaluators. *See*
22 *id.* ¶ 55-56. According to Mr. Smith, "[D]efendants themselves" issued reports and statements prior
23 to the April 17, 2012 meeting which state that A.S. has a good support system at home. *Id.* ¶ 56.
24 (At that time and for several previous years A.S. was in the sole custody of Mr. Smith. *Id.*) Mr.
25 Smith alleges that one of these reports even described Mr. Smith as a source of support and strength
26 in A.S.'s life. *Id.* In addition, Connie Freeman, who is a licensed educational psychologist, issued a

---

[6] Mr. Smith never identifies who "Virginia Matich" is. *See generally* TAC, ECF No. 27.

Confidential Psychological Report on April 25, 2012 that states that neither Mr. Smith nor his home poses any risk to A.S. *Id.* ¶ 55. Ms. Freeman's report also specifically stated that A.S. was in no emotional danger and was not suffering any severe anxiety, depression, or withdrawal. *Id.*

As of January 30, 2013 (the date of the Third Amended Complaint), A.S. remains in the custody of CPS, roughly nine months after she was removed from Mr. Smith's custody. *Id.* ¶ 62. As a result, A.S. is now exhibiting disturbing behavioral signs. *Id.* ¶ 63.

## II. PROCEDURAL HISTORY

Mr. Smith filed his original complaint on July 6, 2012. Complaint, ECF No. 1. Four days later, on July 10, 2012, he filed a First Amended Complaint containing nine claims. *See* FAC, ECF No. 5. At this time, Mr. Smith was proceeding *pro se*. On July 30, 2012, Defendants filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss Mr. Smith's First Amended Complaint for failure to state a claim for relief. MTD FAC, ECF No. 6. After that, Mr. Smith hired an attorney and opposed the motion to dismiss. Substitution of Counsel, ECF No. 13; Opposition to MTD FAC, ECF No. 12. On October 10, 2012, the court granted Defendants' motion and gave Mr. Smith leave to file a Second Amended Complaint. 10/10/2012 Order, ECF No. 20.

He did so on October 30, 2012. *See* SAC, ECF No. 21. In his Second Amended Complaint, Mr. Smith brought the following eight claims: (1) "disability harassment" in violation of subsections 2(B)(2)-(5) of the Americans with Disabilities Act of 2008 ("ADA"), 42 U.S.C. §12131 et seq.; (2) retaliation in violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 156; (3) violation of the Due Process Clauses of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution; (4) violation of 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 463 U.S. 658 (1978), for failure to train or supervise; (5) supervisory liability under 42 U.S.C. § 1983 and *Monell*; (6) conspiracy in violation of 42 U.S.C. § 1985(c); (7) intentional infliction of emotional distress; and (8) negligent infliction of emotional distress. *See id.*

On November 19, 2012, Defendants moved to dismiss the Second Amended Complaint. MTD SAC, ECF No. 22. The court granted Defendants' motion on January 9, 2013. 1/9/2013 Order, ECF No. 26. The court dismissed without prejudice Mr. Smith's first (as against the District), second (as against the District), third (to the extent it is based on the Fourteenth Amendment), fourth, fifth, and

sixth claims; and dismissed with prejudice his first (as against the Individual Defendants), second (as against the Individual Defendants), fourth (to the extent it is based on the Fourth and Eighth Amendments), seventh, and eighth claims. *Id.* at 18.

Mr. Smith filed a Third Amended Complaint on January 30, 2013. TAC, ECF No. 27. This time, he alleges, on behalf of himself only, the following six claims: (1) retaliation in violation of subsections 2(B)(2)-(5) of the ADA (against the District only); (2) retaliation in violation of Section 504 of the Rehabilitation Act (against the District only); (3) violation of 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution (against all Defendants); (4) violation of 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 463 U.S. 658 (1978), for failure to train or supervise (against all Defendants); (5) supervisory liability under 42 U.S.C. § 1983 and *Monell* (against Ms. Liddell only); and (6) conspiracy in violation of 42 U.S.C. § 1985(c). *Id.* ¶¶ 64-129.

Defendants now move to dismiss Mr. Smith's third, fourth, fifth, and sixth claims. MTD TAC, ECF No. 28. Mr. Smith opposes the motion. Opposition, ECF No. 29.

## ANALYSIS

### I. LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. DISCUSSION

In their motion, Defendants attack the sufficiency of Mr. Smith's third, fourth, fifth, and sixth claims on various grounds. *See generally* MTD TAC, ECF No. 28. Each of them are addressed in turn below.

### A. Mr. Smith's Third Claim for Violation of the Fourteenth Amendment

Mr. Smith brings his third claim, pursuant to 42 U.S.C. § 1983, against "all Defendants" for violation of the "Due Process Clause" of the Fourteenth Amendment. TAC, ECF No. 27 ¶¶ 88-94. Defendants argue that this claim must be dismissed as against the District because Mr. Smith has not sufficiently alleged a municipal liability claim. MTD TAC, ECF No. 28 at 5. In his opposition brief, Mr. Smith concedes that the District should be dismissed from his third claim. Opposition, ECF No. 29 at 4. In light of Mr. Smith's concession, the court **DISMISSES WITH PREJUDICE** his third claim insofar as it is brought against the District.

///

///

### B. Mr. Smith's Fourth Claim for Violation of § 1983 and *Monell* for Failure to Train or Supervise

Mr. Smith brings his fourth claim, pursuant to 42 U.S.C. § 1983 and *Monell*, against "all Defendants" for failure to train or supervise. TAC, ECF No. 27 ¶¶ 95-106. With respect to the Individual Defendants, Defendants argue that Mr. Smith's fourth claim is deficient because he has not sufficiently alleged the Individual Defendants' personal participation in the training about or supervision of student bullying. MTD TAC, ECF No. 6-8. In his opposition brief, Mr. Smith "clarifies" that he intended to bring his fourth claim against the District only and concedes that it should be dismissed insofar as it is brought against the Individual Defendants. Opposition, ECF No. 29 at 4. In light of Mr. Smith's concession, the court **DISMISSES WITH PREJUDICE** his fourth claim insofar as it is brought against the Individual Defendants.

With respect to the District, Defendants argue that Mr. Smith's fourth claim is deficient because (1) he has not alleged facts establishing an unconstitutional policy, custom, or practice, and (2) even if he had, he cannot sufficiently allege that the lack of training about or supervision of student bullying was the "moving force" behind the alleged violation of his constitutional right of familial association. MTD TAC, ECF No. 28 at 6-8.

As the court explained in its 1/9/2013 Order, 42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by any person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). Section 1983 is not itself a source for substantive rights, but rather is a method for vindicating federal rights elsewhere conferred. *See Graham v. Connor*, 490 U.S. 386, 393–394 (1989). To state a claim under § 1983, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988). In so doing, a plaintiff must name the federal right of which he or she was deprived. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("By the plain terms of § 1983, two–and only two–allegations are required in order to state a cause of action under that statute. First, the

1  plaintiff must allege that some person has deprived him of a federal right.  Second, he must allege
2  that the person who has deprived him of that right acted under color of state or territorial law.");
3  *Shakespeare v. Wilson*, 40 F.R.D. 500, 503–04 (S.D. Cal. 1966) (requiring that a § 1983 claim "set
4  forth with some specificity . . . the nature of the Constitutional rights involved").

5  Here, Mr. Smith brings this action only on his own behalf.  Thus, to state a claim under § 1983,
6  he must identify which of his federal rights the District violated.  As Defendants point out, Mr.
7  Smith does not specifically identify a federal right in his fourth cause of action.  *See* TAC, ECF No.
8  27 ¶¶ 95-106.  But his fourth cause of action does incorporate his previous allegations, one of which
9  is that Defendants have "deprived [Mr. Smith of] his fundamental right as a father to make decisions
10 concerning the care, custody, and control of his child A.S."  *Id.* ¶ 91.  It thus appears that Mr. Smith
11 alleges that it is his fundamental right of familial association that has been violated.  *See Rosenbaum*
12 *v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) ("The substantive due process right to family
13 integrity or to familial association is well established.  A parent has a fundamental liberty interest in
14 companionship with his or her child.") (internal quotation marks and citation omitted).

15 In his opposition brief, Mr. Smith states that the "failure to properly enact policies to prevent
16 disability bullying, and [the] resultant retaliation by government officials against those who stand up
17 for the rights of the disabled is in and of itself a 14th Amendment violation."  Opposition, ECF No.
18 29 at 20.  In other words, "the constitutional violation is the entire injury" he suffered.  *Id.*  The
19 problem is that Mr. Smith cites no authority for this statement.  Rather, the authority he cites
20 demonstrates only that a parent has a fundamental liberty interest "in the care, custody, and control
21 of their children," *see Troxel v. Granville*, 530 U.S. 57, 65-66 (2000), which is encompassed by the
22 fundamental right of familial association, *see United States v. Wolf Child*, 699 F.3d 1082, 1092 (9th
23 Cir. 2012) (citing *Troxel*, 530 U.S. at 65, and *Rosenbaum*, 663 F.3d at 1079, and noting that "[t]he
24 substantive due process right to family integrity or to familial association is well established" and "is
25 perhaps the oldest of the fundamental liberty interests recognized by [the Supreme Court]").  Thus,
26 to the extent that Mr. Smith contends that the District violated a fundamental right other than that of
27 familial association, his claim is **DISMISSED WITHOUT PREJUDICE**.
28 The court also explained in its 1/9/2013 Order that local governments are "persons" subject to

C 12-03533 LB
ORDER
10

liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *See Monell*, 436 U.S. at 690. A municipality, however, may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation. *See Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

Liability based on a municipal policy may be satisfied in one of three ways: (1) by alleging and showing that a city or county employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice or custom that is the customary operating procedure of the local government entity; (2) by establishing that the individual who committed the constitutional tort was an official with final policymaking authority, and that the challenged action itself was an act of official governmental policy which was the result of a deliberate choice made from among various alternatives; or (3) by proving that an official with final policymaking authority either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the basis for it. *See Fuller*, 47 F.3d at 1534; *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, --- U.S. ----, 131 S.Ct. 1350, 1359 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* ")). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate

indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 389; *see Connick*, 131 S.Ct. at 1359-60.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997).  "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 131 S.Ct. at 1360 (citing *Bryan Cty.*, 520 U.S. at 407).  "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* (quoting *City of Canton*, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part)).  "A less stringent standard of fault for a failure-to-train claim 'would result in *de facto respondeat superior* liability on municipalities . . . .'" *Id.* (quoting *City of Canton*, 489 U.S. at 392); *see also Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . . .").  Thus, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S.Ct. at 1360 (quoting *Bryan Cty.*, 520 U.S. at 409).  "Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.'" *Id.* (quoting *Bryan Cty.*, 520 U.S. at 407 (internal quotation marks omitted)).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

As described above, Defendants argue that Mr. Smith has not alleged facts establishing an unconstitutional policy, custom, or practice.  There is some confusion about what Mr. Smith alleges

1    in this regard. On one hand, Mr. Smith alleges that the District failed to train its employees about
2    how to prevent students from bullying students with disabilities and how to address bullying once it
3    occurs and that this resulted in CPS taking A.S. from him. *See* TAC, ECF No. 27 ¶¶ 96-105; *see*
4    *also* Opposition, ECF No. 29 at 19. This failure, he alleges, amounted to a "deliberate indifference"
5    to the rights of persons with whom the untrained employees come into contact such that it rises to
6    the level of an official government policy for purposes of § 1983. *See* TAC, ECF No. 27 ¶¶ 96-105;
7    *see also Connick*, 131 S.Ct. at 1359-60.

8    On the other hand, Mr. Smith states in his opposition brief that he also alleges "that a 'policy of
9    omission' existed within [the District], based upon (a) a lack of any policy to prevent abuse of power
10   of 'mandated reporters of suspected child abuse' and (b) [the failure] to train its employees as to
11   [the] appropriate use of the power to report suspected child abuse as mandated reports acting under
12   [the District's] imprimatur or putative authority." Opposition, ECF No. 29 at 19. Even assuming
13   that Mr. Smith could allege sufficient facts to show that such a policy existed and that such a policy
14   would violate a federal right—Mr. Smith cites no authority in support of this argument in his
15   opposition brief—sufficient allegations in that regard do not appear in the Third Amended
16   Complaint. *See generally* TAC, ECF No. 27. Mr. Smith makes one conclusory allegation that
17   "Defendants" failed "to train and monitor the actions of its employees as to the appropriate use of
18   the powers vested in them to make reports of child abuse," *see* TAC, ECF No. 27 ¶ 115, but he does
19   not allege any facts to support this conclusion, *see generally id.* In sum, the only non-conclusory
20   allegations about the District's failure to train relate to its failure to train its employees about how to
21   deal with bullying. *See generally id.* Thus, to the extent his fourth claim is based upon the District's
22   failure to train its employees about reporting suspected child abuse, it is **DISMISSED WITHOUT**
23   **PREJUDICE**.

24   With Mr. Smith's fourth claim so limited, the court need not determine whether Mr. Smith has
25   alleged sufficient facts to show a pattern of similar constitutional violations by untrained employees
26   because, even if he has, the District's failure to train its employees to protect students from being
27   bullied by other students does not violate the Due Process Clause of the Fourteenth Amendment. In
28   *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the Supreme Court

C 12-03533 LB
ORDER
13

1  concluded that, generally, a State's failure to protect an individual against private violence simply
2  does not constitute a violation of the Due Process Clause. *Id.* at 195-97. But there are two
3  exceptions: first, "when the State takes a person into its custody and holds him there against his will,
4  the Constitution imposes some responsibility for [that person's] safety and general well-being"; and
5  second, "where the state affirmatively places the plaintiff in a dangerous situation." *Huffman v.*
6  *Cnty. of Los Angeles*, 147 F.3d 1054, 1058-59 (9th Cir. 1998) (citations and internal quotation marks
7  omitted). Neither exception applies here.

8      Mr. Smith does not argue that A.S. was in "custody" because she was in attendance at Proctor
9  Terrace when the bullying occurred, but even if he had, this argument would fail. While the Ninth
10 Circuit has yet to rule on the issue, in the context of school bullying and harassment, courts have
11 held that schools have no duty under the Fourteenth Amendment's Due Process Clause to protect
12 students from assaults by other students, "even where the school knew or should have known of the
13 danger presented." *Santucci v. Newark Valley Sch. Dist.*, No. 3:05-CV-0971, 2005 WL 2739104, at
14 * 3 (N.D.N.Y. Oct. 24, 2005) (collecting cases); *see Hasenfus v. Lajeunesse*, 175 F.3d 68, 70-73 (1st
15 Cir. 1999) (holding that a school had no duty to protect a student from attempted suicide, even when
16 there had been attempts by seven other students in the preceding three months); *Doe v. Hillsboro*
17 *Indep. School Dist.*, 113 F.3d 1412, 1414-16 (5th Cir. 1997) (holding that a school district could not
18 be liable for a janitor raping a student because compulsory school attendance laws do not create a
19 special relationship between the school and the student); *Wyke v. Polk County Sch. Bd.*, 129 F.3d
20 560, 570 (11th Cir. 1997) (holding that a school board had no constitutional duty to protect a student
21 from harming himself); *Walton v. Alexander*, 44 F.3d 1297, 1305 (5th Cir. 1995) (holding that a
22 state had no special relationship with a student who was molested by a fellow student because the
23 student attended school of his own free will); *Graham v. Indep. School Dist. No. I-89*, 22 F.3d 991,
24 993-95 (10th Cir. 1994) (holding that compulsory attendance laws do not create a special
25 relationship between school and student); *Dorothy J. v. Little Rock School Dist.*, 7 F.3d 729, 732
26 (8th Cir. 1993) (holding that state-mandated school attendance does "not entail so restrictive a
27 custodial relationship as to impose upon the State the same duty to protect it owes to prison
28 inmates"); *Black v. Indiana Area School Dist.*, 985 F.2d 707, 713-14 (3rd Cir. 1993) (holding that a

superintendent did not have a special relationship with students and could not be liable for the molestation of students by a school bus driver); *Maldonado v. Josey*, 975 F.2d 727, 729-33 (10th Cir. 1992) (holding that compulsory school attendance did not sufficiently restrain a school child's liberty as to make the defendant responsible for a student's accidental strangulation); *J.O. v. Alton Cmty. Unit School Dist. 11*, 909 F.2d 267 (7th Cir. 1990) ("[T]he government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises. Whatever duty of protection does arise is best left to the laws outside the Constitution, as [the state] has done."); *see also Veronica School Dist. v. Acton*, 515 U.S. 646, 655 (1995) ("[W]e do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional 'duty to protect.'").

Nor does Mr. Smith argue that the District took affirmative actions that placed A.S. in a dangerous situation.  To maintain a claim under the state-created danger exception, a plaintiff must establish that a defendant affirmatively placed the plaintiff "in a situation that was more dangerous that the one in which [they] found [her]."  *Munger v. City of Glasgow*, 227 F.3d 1082, 1086 (9th Cir. 2000).  A state official cannot affirmatively place an individual in danger by merely failing to act.  *See Johnson v. City of Seattle*, 474 F.3d 634, 641 (9th Cir. 2007).  The "policy" that Mr. Smith alleges exists is based on the District's failure to act, not its affirmative actions.

Thus, Mr. Smith's claim against the District, to the extent that it is based upon the District's failure to train its employees about how to prevent students from bullying students with disabilities and how to address bullying once it occurs, is **DISMISSED WITH PREJUDICE** because Mr. Smith cannot allege an unconstitutional policy, custom, or practice.  *See Mohat v. Mentor Exempted Village School Dist. Bd. of Educ.*, No. 1:09 CV 688, 2011 WL 2174671, at *6-9 (N.D. Ohio June 1, 2011) (dismissing with prejudice parent plaintiffs' § 1983 claim against a school district for failing to prevent the bullying of the student plaintiff because the district did not have duty to protect the plaintiff under the Due Process Clause of the Fourteenth Amendment).

**C.  Mr. Smith's Fifth Claim for Supervisory Liability under § 1983 and *Monell***

In his fifth cause of action, Mr. Smith brings a claim for supervisory liability under § 1983 against Ms. Liddell.  TAC, ECF No. 27 ¶¶ 107-116.

As the court explained in its 1/9/2013 Order, "[a] defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted).  "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).  To adequately plead such a claim, "allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id*. at 1216. These factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*.

In essence, it appears that Mr. Smith alleges that Ms. Liddell, despite personally knowing that A.S. was being bullied, failed to train the District's employees about how to prevent students from bullying students with disabilities and how to address bullying once it occurs, out of deliberate indifference to A.S.'s rights.  *See* TAC, ECF No. 27 ¶¶ 108-116.[7]  For the reasons explained above, Mr. Smith cannot allege an unconstitutional policy, custom, or practice based on the failure to train employees about how to prevent students from bullying students with disabilities and how to address

---

[7] As the court explained above when discussing Mr. Smith's fourth claim, Mr. Smith's Third Amended Complaint does not sufficiently allege claims based on the District's failure to train its employees about reporting suspected child abuse.  To the extent his fifth claim against Ms. Liddell is based upon the same allegations, it, too, is **DISMISSED WITHOUT PREJUDICE**.  The court also notes that Mr. Smith also may base his fifth claim on a theory that Ms. Liddell ratified the District employees' alleged practice of filing of temporary restraining orders to violate the constitutional rights of parents of District students.  *See id.* ¶ 113 (Ms. Liddell "was aware of the aggressive[,] improper tactic[, and] routine practice of seeking [temporary restraining orders] to silence parents and critics of the policy to discriminate against the disabled).  But aside from this conclusory sentence, Mr. Smith alleges no facts about Ms. Liddell's personal knowledge of or involvement with any of the temporary restraining orders that actually were filed. *See generally id.*  Accordingly, to the extent that his fifth claim is based on a ratification theory, it is **DISMISSED WITHOUT PREJUDICE**.

1 bullying once it occurs. Such a failure does not violate the Due Process Clause of the Fourteenth
2 Amendment. Accordingly, Mr. Smith's claim against Ms. Liddell, to the extent that it is based upon
3 the failure to train District employees about how to prevent students from bullying students with
4 disabilities and how to address bullying once it occurs, is **DISMISSED WITH PREJUDICE**.

### D. Mr. Smith's Sixth Claim for Conspiracy in Violation of § 1985

Mr. Smith also brings a claim against all Defendants for conspiracy under 42 U.S.C. § 1985(c). TAC, ECF No. 27 ¶¶ 117-129. Defendants argue that Mr. Smith has not sufficiently alleged an "agreement" among them. MTD TAC, ECF No. 28 at 8-9.

As the court explained in its 1/9/2013 Order, to state a claim under § 1985(c) for a conspiracy to violate civil rights, a plaintiff must plead four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). Further, "[t]o establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at 1301). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id*. (quoting *Mendocino Envtl. Ctr.*, 192 F.3d at 1301) (quotation marks omitted). "Whether defendants were involved in an unlawful conspiracy is generally a factual issue . . . ." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301–02 (citation omitted). Nevertheless, "the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dept. of Social and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)); *see also Maceachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1110 (C.D. Cal. 2009). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id*. (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc)) (quotation marks omitted). In addition, a

1 plaintiff must show that an "actual deprivation of his constitutional rights resulted from the alleged
2 conspiracy." *Hart v. Parks*, 450 F.3d 1059, 1071–72 (9th Cir. 2006) (quoting *Woodrum v.
3 Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989)) (quotation marks omitted).

The court believes that Mr. Smith sufficiently alleges an agreement. He cites to various discussions between Defendants about how to handle Mr. Smith's complaints, and this is enough, at the pleading stage, to allege an agreement. *See Mendocino Envtl. Ctr.*, 192 F.3d at 1301–02 ("Whether defendants were involved in an unlawful conspiracy is generally a factual issue . . . .") (citation omitted).

The problem is that the agreement that Mr. Smith alleges is "to carry out alleged violations of A.S.'s rights." TAC, ECF No. 27 ¶ 118; *see id.* ¶ 124 ("the conspiracy was intentionally directed at a learning disabled student").[8] Mr. Smith is the only plaintiff to this action, and he brings it in his individual capacity, so he must allege violations of his rights. Even so, as the court explained above, his claim fails for other reasons. To the extent that his conspiracy claim is based upon the District's failure to train its employees about how to prevent students from bullying students with disabilities and how to address bullying once it occurs, his claim is **DISMISSED WITH PREJUDICE** because such a failure does not violate the Due Process Clause of the Fourteenth Amendment. To the extent that it is based upon the District's failure to train its employees about reporting suspected child abuse, it is **DISMISSED WITHOUT PREJUDICE** because Mr. Smith does not allege sufficient facts to support such a theory.

///

---

[8] Mr. Smith also alleges that Defendants' actions "were part and parcel of a conspiracy for the purpose of depriving Plaintiff of equal protection of the law (i[.]e[.], the right of Plaintiff's daughter A[.]S[.] to a free public education from disability-harassment and retaliation as a result of A.S.[']s disabilities) and with a goal of removing Plaintiff and his daughter from the school district by any means necessary resulting in grievous injury and harm to Plaintiff." TAC, ECF No. 27 ¶ 123. The sentence is problematic. First, it seems to use "Plaintiff" to describe both Mr. Smith and A.S., but only Mr. Smith is the plaintiff to this action. Second, this is the first and only time that Mr. Smith mentions anything about "equal protection," which presumably refers the Equal Protection Clause of the 14th Amendment. Mr. Smith does not allege a claim for violation of the Equal Protection. *See generally* TAC.

**E. Mr. Smith's Voluntary Dismissal of Mr. Harrington and Ms. Sanders**

Although he named Mr. Harrington and Ms. Sanders as defendants in his Third Amended Complaint, Mr. Smith states that he "voluntarily dismisses" each of them. TAC, ECF No. 27 ¶¶ 2, 6. He further states that he "will file a notice [of] voluntary dismissal to reflect the above." *Id.* Mr. Smith reiterated this dismissal in his opposition brief. Opposition, ECF No. 4 n.1. Accordingly, the court **DISMISSES WITHOUT PREJUDICE** all claims against Mr. Harrington and Ms. Sanders. *See* Fed. R. Civ. P. 41(a)(1)(A)(I); *see* Fed. R. Civ. P. 41(a)(1)(B) (unless otherwise stated, a voluntary dismissal is without prejudice).

**CONCLUSION**

Based on the foregoing, the court **GRANTS** Defendants' motion and **DISMISSES** Mr. Smith's claims as follows: (I) his third claim is **DISMISSED WITH PREJUDICE** insofar as it is brought against the District; (II) his fourth claim is (A) **DISMISSED WITH PREJUDICE** insofar as it is brought against the Individual Defendants, (B) **DISMISSED WITH PREJUDICE** to the extent that he alleges a due process claim against the District for failure to train its employees about how to prevent students from bullying students with disabilities and how to address bullying once it occurs, and (C) **DISMISSED WITHOUT PREJUDICE** to the extent that it is based (1) on a contention that the District violated a fundamental right other than the right of familial association or (2) on the District's failure to train its employees about how to report child abuse; (III) his fifth claim is (A) **DISMISSED WITH PREJUDICE** to the extent that he alleges a due process claim based on the District's failure to train its employees about how to prevent students from bullying students with disabilities and how to address bullying once it occurs and (B) **DISMISSED WITHOUT PREJUDICE** to the extent that it is based on (1) Ms. Liddell's failure to train employees about how to report child abuse or (2) her alleged ratification of the District's alleged practice regarding the filing of temporary restraining orders; and (IV) his sixth claim is (A) **DISMISSED WITH PREJUDICE** to the extent that he alleges a due process claim against the District for failure to train its employees about how to prevent students from bullying students with disabilities and how to address bullying once it occurs and (B) **DISMISSED WITHOUT PREJUDICE** to the extent that it is based on the District's failure to train its employees about how to report child abuse. Also, all

C 12-03533 LB
ORDER
19

1 claims against Mr. Harrington and Ms. Sanders are **DISMISSED WITHOUT PREJUDICE** per Mr. Smith's voluntary dismissal of these defendants. Mr. Smith may file a Fourth Amended Complaint within 21 days from the date of this order.

**IT IS SO ORDERED.**

Dated: March 25, 2013

_____
LAUREL BEELER
United States Magistrate Judge